# United States Court of Appeals for the Federal Circuit

---

**CLICK-TO-CALL TECHNOLOGIES, LP,**
*Appellant*

**v.**

**INGENIO, INC., YELLOWPAGES.COM, LLC,**
*Appellees*

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2015-1242

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00312.

---

Decided: August 16, 2018

---

PETER J. AYERS, Law Office of Peter J. Ayers, Austin, TX, for appellant.

STANLEY JOSEPH PANIKOWSKI, III, DLA Piper US LLP, San Diego, CA, argued for all appellees. Appellees Ingenio, Inc., YellowPages.com, LLC represented by MITCHELL

G. STOCKWELL, Kilpatrick Townsend & Stockton LLP, Atlanta, GA. Appellee YellowPages.com, LLC also represented by DAVID CLAY HOLLOWAY.

MOLLY R. SILFEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by SARAH E. CRAVEN, MARY L. KELLY, THOMAS W. KRAUSE.

---

Before O'MALLEY and TARANTO, *Circuit Judges,* and STARK, *Chief District Judge*[*].

Opinion for the court filed by *Circuit Judge* O'MALLEY, in which TARANTO, *Circuit Judge*, and STARK, *Chief District Judge*, join.

Footnote 3 of the opinion is joined by PROST, *Chief Judge*, NEWMAN, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

Opinion concurring in footnote 3 of the opinion filed by *Circuit Judge* TARANTO.

Opinion dissenting from footnote 3 of the opinion filed by *Circuit Judge* DYK, in which *Circuit Judge* LOURIE joins.

O'MALLEY, *Circuit Judge.*

This long-marooned case returns to us after a voyage alongside two others interpreting the scope of 35 U.S.C. § 314(d)'s "No Appeal" provision and its applicability to time-bar determinations under 35 U.S.C. § 315(b): *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), and *Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364 (Fed. Cir. 2018) (en banc). Because we have held en banc

---

[*]     The Honorable Leonard P. Stark, Chief District Judge, United States District Court for the District of Delaware, sitting by designation.

"that the time-bar determinations under § 315(b) are appealable," *Wi-Fi One*, 878 F.3d at 1367, we address for the first time the merits of Appellant Click-to-Call Technologies, LP's ("CTC") contention that the Patent Trial and Appeal Board ("Board") erred in determining that an inter partes review ("IPR") petition challenging claims of CTC's patent was not time-barred under § 315(b).

We conclude that the Board committed legal error in rendering its § 315(b) determination, and reject the proposed, alternative grounds for affirmance. Because the subject petition was time-barred, the Board lacked jurisdiction to institute the IPR proceedings. Accordingly, we vacate the Board's Final Written Decision in *Oracle Corp. v. Click-to-Call Technologies LP*, No. IPR2013-00312 (P.T.A.B. Oct. 28, 2014), Paper No. 52 (*Final Written Decision*), and remand with instructions to dismiss IPR2013-00312.

## I. BACKGROUND

### A. The District Court Actions

On June 8, 2001, Inforocket.Com, Inc. ("Inforocket"), the exclusive licensee of U.S. Patent No. 5,818,836 ("the '836 patent"), filed a civil action in the United States District Court for the Southern District of New York. Compl., *Inforocket.Com, Inc. v. Keen, Inc.*, CA No. 1:01-cv-05130-LAP (S.D.N.Y.), ECF No. 1 (*Inforocket Action*). Inforocket served a complaint asserting infringement of the '836 patent on defendant Keen, Inc. ("Keen") on September 14, 2001. Affidavit of Service, *Inforocket Action*, ECF No. 4.

Shortly thereafter, Keen brought its own infringement suit against Inforocket based on U.S. Patent No. 6,223,165, which proceeded before the same district judge as the *Inforocket Action*. *See generally Keen, Inc. v. Inforocket.Com, Inc.*, CA No. 1:01-cv-8226-LAP (S.D.N.Y.) (*Keen Action*). In the *Keen Action*, the district court

granted Inforocket's motion for summary judgment of noninfringement and entered judgment in favor of Inforocket in July 2002. *See* Order Granting Inforocket's Mot. for Summ. J., *Keen Action*, ECF No. 47; Judgment, *Keen Action*, ECF No. 48. Keen filed a Notice of Appeal to this court on August 23, 2002. Notice of Appeal, *Keen Action*, ECF No. 49.

In 2003, while its appeal was pending, Keen acquired Inforocket as its wholly-owned subsidiary. Thereafter, subject to the terms of the merger, Inforocket and Keen stipulated to a voluntary dismissal of both suits "without prejudice," and the district court dismissed both actions on the same day—March 21, 2003. *See* Stipulation and Order of Dismissal, *Inforocket Action*; Stipulation and Order of Dismissal, *Keen Action*.[1] Later in 2003, Keen changed its name to Ingenio, Inc. ("Ingenio").

On April 20, 2004, Ingenio requested *ex parte* reexamination of claims 1–21 of the '836 patent. The Director of the Patent & Trademark Office ("Director") granted Ingenio's request, and issued an *ex parte* reexamination certificate on December 30, 2008. Several claims were cancelled, others were determined to be patentable as amended, and new claims 22–30 were added.

Meanwhile, in late 2007, non-party AT&T announced its plan to acquire Ingenio and integrate Ingenio and YellowPages.com, also owned by AT&T. In January 2008, Ingenio was acquired by a subsidiary of AT&T Inc. and its name was changed to Ingenio, LLC (also "Ingenio"). In April 2012, AT&T sold its interest in YellowPages.com and Ingenio.

---

[1]  The appeal in the *Keen Action* was also dismissed by agreement of the parties on March 19, 2003, under Fed. R. App. P. 42(b). *Keen, Inc. v. Inforocket.Com, Inc.*, 60 F. App'x 809 (Fed. Cir. 2003).

CTC subsequently acquired the '836 patent, and, on May 29, 2012, asserted patent infringement claims against multiple parties in the United States District Court for the Western District of Texas. Compl., *Click-to-Call Techs. LP v. AT&T, Inc.*, No. 1:12-cv-00465-LY (W.D. Tex.), ECF No. 1 (*AT&T Action*); Compl., *Click-to-Call Techs. LP v. Oracle Corp.*, No. 1:12-cv-00468-LY (W.D. Tex.), ECF No. 1 (*Oracle Action*). Among the defendants named in the *AT&T Action* was Ingenio, which subsequently changed its name to YP Interactive LLC ("YP Interactive"). Both the *AT&T Action* and the *Oracle Action* are currently stayed.

## B. The IPR Proceedings

On May 28, 2013, Ingenio, together with Oracle Corp., Oracle OTC Subsidiary LLC, and YellowPages.com LLC (together, "Petitioners" or "Appellees"),[2] filed a single IPR petition challenging claims of the '836 patent on anticipation and obviousness grounds. CTC filed its Preliminary

---

[2] As we discuss in Section II(D)(2), *infra*, Petitioners identified themselves as a singular "Petitioner" in their IPR petition. For simplicity, we refer to the collective as "Petitioners" in this Opinion. We use this convention even though Oracle Corp. and Oracle OTC Subsidiary LLC filed an unopposed motion to withdraw from further participation in this appeal on June 14, 2018, after settling their disputes with CTC. *See* Mot. to Withdraw, No. 15-1242 (Fed. Cir. June 14, 2018), ECF No. 121. These entities noted that their "motion does not affect the participation of the non-Oracle Appellees, YellowPages.com LLC and YP Interactive LLC, in this appeal." *Id.* at 1. As neither the other Petitioners' participation in this appeal nor the outcome of this case would be affected by granting the Oracle entities' requested relief, we granted their motion. *See* Order Granting Mot. to Withdraw, No. 15-1242 (Fed. Cir. July 24, 2018), ECF No. 123.

Response on August 30, 2013, contending, among other things, that § 315(b) statutorily barred institution of IPR proceedings, and that Ingenio lacked standing under 37 C.F.R. § 42.101(b). In its Preliminary Response, CTC presented evidence that Ingenio was served with a complaint alleging infringement of the '836 patent in 2001.

The Board held a conference call with counsel for CTC and Petitioners in September 2013, in part to discuss CTC's § 315(b) argument. The Board then issued an order pursuant to 37 C.F.R. § 42.5 in which it requested additional briefing addressing the terms of the dismissal of the *Inforocket Action*. Both parties submitted additional briefing in compliance with the Board's request.

The Board issued its Institution Decision on October 30, 2013. With respect to the § 315(b) issue, the Board acknowledged that Ingenio was served with a complaint alleging infringement of the '836 patent on June 8, 2001 and found CTC's timeline of events "helpful in determining whether Ingenio, LLC is barred from filing an *inter partes* review of the '836 patent." J.A. 287. The Board then recited the language of § 315(b), and stated that the "statute requires that the service date of the complaint be more than one year before the petition was filed—in this case more than one year before May 28, 2013." J.A. 288.

Notwithstanding the above, the Board concluded that CTC "has not established that service of the complaint in the [*Inforocket Action*] bars Ingenio, LLC from pursuing an *inter partes* review for the '836 patent" because that infringement suit was "dismissed voluntarily without prejudice on March 21, 2003, pursuant to a joint stipulation under Fed. R. Civ. P. 41(a)." J.A. 288–89. The Board wrote that "[t]he Federal Circuit consistently has interpreted the effect of such dismissals as leaving the parties as though the action had never been brought," citing this court's decisions in *Graves v. Principi*, 294 F.3d 1350 (Fed. Cir. 2002), and *Bonneville Associates, Ltd. Partner-*

*ship v. Barram*, 165 F.3d 1360 (Fed. Cir. 1999). J.A. 289. The Board also relied on Wright & Miller's Federal Practice and Procedure treatise for the proposition that, "as numerous federal courts have made clear, a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed." J.A. 289 (quoting 9 Wright, Miller, Kane, and Marcus, Federal Prac. & Proc. Civ. § 2367 (3d ed.)). The Board concluded by determining that "the dismissal of the infringement suit brought by Inforocket against Keen—now Ingenio, LLC—nullifies the effect of the service of the complaint and, as a consequence, does not bar Ingenio, LLC or any of the other Petitioners from pursuing an *inter partes* review of the '836 patent." J.A. 289. In light of this determination, the Board did not address the following two contingent questions: (1) whether the patent at issue in the *Inforocket Action* is the same patent at issue in the IPR due to amendments made in the interim; and (2) whether § 315(b)'s time bar should be determined on a "petitioner-by-petitioner" basis. J.A. 289–90.

CTC requested rehearing of this § 315(b) determination, but the Board denied its request. CTC filed its Patent Owner Response on January 16, 2014, addressing the merits of Petitioners' unpatentability arguments and again requesting dismissal of the petition because the Board lacked statutory authority to review the '836 patent under § 315(b), and because Petitioners lacked standing under 37 C.F.R. § 42.101(b).

The Board issued its Final Written Decision on October 28, 2014, reaffirming its conclusion that Petitioners were not barred from filing an IPR petition by stating that, "because [the *Inforocket Action*] was dismissed without prejudice, Federal Circuit precedent interprets such a dismissal as leaving the parties in the same legal position as if the underlying complaint had never been served." *Final Written Decision* at *7. The Board also determined that claims 1, 2, 8, 12, 13, 15, 16, 19, 22, 23,

26, 29, and 30 either were anticipated by or would have been obvious in view of certain prior art references. *Id.* at \*14. Those merits determinations are not at issue in this appeal.

## C. The History of this Appeal

CTC filed its Notice of Appeal on November 25, 2014, and briefing commenced shortly thereafter. In April 2015, the Director intervened solely to address the § 315(b) time bar issue. *See* Intervenor Docketing Statement, No. 15-1242 (Fed. Cir. Apr. 1, 2015), ECF No. 28.

On October 12, 2015, counsel for Appellees submitted a Rule 28(j) letter informing the court of our decision in *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), arguing that *Achates* mandates dismissal of the appeal for lack of appellate jurisdiction. Rule 28(j) Citation of Suppl. Authority, No. 15-1242 (Fed. Cir. Oct. 12, 2015), ECF No. 64. In light of *Achates*, this panel subsequently waived oral argument, and, on November 12, 2015, issued an order dismissing CTC's appeal for lack of jurisdiction. *Click-to-Call Techs., LP v. Oracle Corp.*, 622 F. App'x 907 (Fed. Cir. 2015) (per curiam) (*Click-to-Call I*).

CTC petitioned for writ of certiorari, and, on June 27, 2016, the Supreme Court granted the petition, vacated this court's judgment in *Click-to-Call I*, and remanded for further consideration in light of its opinion in *Cuozzo*. *Click-to-Call Techs., LP v. Oracle Corp.*, No. 15-1014 (June 27, 2016). We directed the parties to file supplemental briefs and the parties complied with our directive.

On September 21, 2016, counsel for Appellees filed a second letter regarding supplemental authority, this time informing the court of our decision in *Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329 (Fed. Cir. 2016). Rule 28(j) Citation of Suppl. Authority, No. 15-1242 (Fed. Cir. Sept. 21, 2016), ECF No. 83. In this letter, Appellees

argued that, because *Wi-Fi One* confirmed that *Achates* remained good law, CTC's appeal should again be dismissed for lack of appellate jurisdiction. We agreed with Appellees that we were bound by our precedents in *Wi-Fi One* and *Achates*, and on November 17, 2016, dismissed CTC's appeal for a second time. *Click-to-Call Techs., LP v. Oracle Corp.*, No. 15-1242, 2016 WL 6803054 (Fed. Cir. Nov. 17, 2016) (*Click-to-Call II*).

On December 5, 2016, CTC filed a petition for en banc rehearing, principally arguing that *Achates* and *Wi-Fi One* should be overruled. Pet. for Reh'g En Banc, No. 15-1242 (Fed. Cir. Dec. 5, 2016), ECF No. 91. Less than one month later, CTC's wish was partially granted when this court agreed to consider en banc whether it should overrule *Achates* and hold that judicial review is available for a patent owner to challenge the Director's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. § 315(b). Order, *Wi-Fi One, LLC v. Broadcom Corp.*, Nos. 2015-1944, -1945, -1946 (Fed. Cir. Jan. 4, 2017) (en banc), ECF No. 67. The panel in this case subsequently held CTC's petition for rehearing in abeyance pending the outcome of *Wi-Fi One*.

On January 8, 2018, we issued our en banc decision in *Wi-Fi One*, expressly overruling *Achates* and holding that time-bar determinations under § 315(b) are appealable. 878 F.3d at 1367. We subsequently granted CTC's petition for rehearing en banc, which we construed as a petition for panel rehearing, and authorized supplemental briefing regarding the merits of the Board's compliance with § 315(b). Order, No. 15-1242 (Fed. Cir. Jan. 19, 2018), ECF No. 99. CTC, Petitioners, and the Director, as Intervenor, all filed supplemental briefs in February and March of this year.

We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

### A. Section 315(b) and Voluntary Dismissals Without Prejudice

The principal question on appeal is whether the Board erred in interpreting the phrase "served with a complaint alleging infringement of [a] patent" recited in § 315(b) such that the voluntary dismissal without prejudice of the civil action in which the complaint was served "does not trigger" the bar. *Final Written Decision*, slip op. at 12. We hold that it did.[3]

### 1. Legal Standards

We review the Board's statutory interpretation pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *Auer v. Robbins*, 519 U.S. 452 (1997), and *United States v. Mead Corp.*, 533 U.S. 218, 229–30 (2001). *Chevron* requires that a court reviewing an agency's construction of a statute it administers first discern "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If the answer is yes, the inquiry ends, and the reviewing court must give effect to Congress's unambiguous intent. *Id.* at 842–43. If the answer is no, the court must consider "whether the agency's answer [to the precise question at

---

[3]     The en banc court formed of PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*, considered whether 35 U.S.C. § 315(b)'s time bar applies to bar institution when an IPR petitioner was served with a complaint for patent infringement more than one year before filing its petition, but the district court action in which the petitioner was so served was voluntarily dismissed without prejudice. The en banc court holds that § 315(b)'s time bar applies in such a scenario.

issue] is based on a permissible construction of the statute." *Id.* at 843. The agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) (citing *Mead*, 533 U.S. at 229–30).

When a statute expressly grants an agency rulemaking authority and does not "unambiguously direct[ ]" the agency to adopt a particular rule, the agency may "enact rules that are reasonable in light of the text, nature, and purpose of the statute." *Cuozzo*, 136 S. Ct. at 2142 (citing *Mead*, 533 U.S. at 229, and *Chevron*, 467 U.S. at 843). When the Director does adopt rules, "[w]e accept the [Director's] interpretation of Patent and Trademark Office regulations unless that interpretation is plainly erroneous or inconsistent with the regulation." *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004) (quoting *Eli Lilly Co. v. Bd. of Regents of the Univ. of Wash.*, 334 F.3d 1264, 1266 (Fed. Cir. 2003) (citing *Auer*, 519 U.S. at 461–62, and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945))) (internal quotations omitted).

Where an agency instead engages in "interpretive," rather than "formal," rulemaking, a lower level of deference might apply. *See Mead*, 533 U.S. at 230–31 (describing notice-and-comment as "significant . . . in pointing to *Chevron* authority"); *Reno v. Koray*, 515 U.S. 50, 61 (1995) (according "some deference" to an interpretive rule that "do[es] not require notice and comment" (citations omitted)). The Supreme Court has explained that "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead*, 553 U.S. at 228 (footnotes omitted) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)).

## 2. *Chevron* Step One

We begin our analysis of the Board's interpretation of § 315(b) by construing the provision. "As in any case of statutory construction, our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal quotation marks and citation omitted). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). In doing so, we "must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, — U.S. —, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). This is because statutory "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Importantly, we may not conclude that a statutory provision is ambiguous until we conclude that resort to all standard forms of statutory interpretation are incapable of resolving any apparent ambiguity which might appear on the face of the statute. *See Chevron*, 467 U.S. at 843 n.9. And, in discerning whether a statute is ambiguous, we must take care not to weigh competing policy goals, for "[i]t is Congress's job to enact policy and it is th[e] [c]ourt's job to follow the policy Congress has prescribed." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018).

### a. Plain and Unambiguous Language

We "[s]tart where the statute does." *SAS*, 138 S. Ct. at 1355. Section 315(b), titled "Patent Owner's Action," provides that an IPR "may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is *served with a complaint* alleging

infringement of the patent." 35 U.S.C. § 315(b) (emphasis added). The statute does not contain any exceptions or exemptions for complaints served in civil actions that are subsequently dismissed, with or without prejudice. Nor does it contain any indication that the application of § 315(b) is subject to any subsequent act or ruling. Instead, the provision unambiguously precludes the Director from instituting an IPR if the petition seeking institution is filed more than one year after the petitioner, real party in interest, or privy of the petitioner "is served with a complaint" alleging patent infringement. Simply put, § 315(b)'s time bar is implicated once a party receives notice through official delivery of a complaint in a civil action, irrespective of subsequent events.

The "ordinary, contemporary, common meaning[s]" of the operative terms "served" and "complaint" support the understanding that it is wholly irrelevant to the § 315(b) inquiry whether the civil action in which the complaint was filed is later voluntarily dismissed without prejudice. Black's Law Dictionary defines "serve" as "[t]o make legal delivery of (a notice or process)" or "[t]o present (a person) with a notice or process as required by law," and defines "service" as "[t]he formal delivery of a writ, summons, or other legal process[.]" Black's Law Dictionary 1491 (9th ed. 2009). It defines "complaint" as "[t]he initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief." *Id.* at 323. These definitions confirm that the plain meaning of the phrase "served with a complaint" is "presented with a complaint" or "delivered a complaint" in a manner prescribed by law. Indeed, at least one Board decision has interpreted the phrase "served with a complaint" in precisely this manner: "the legally-charged text 'served with a complaint' is used ordinarily in connection with the official delivery of a complaint in a civil action." *Amkor Tech., Inc. v. Tessera,*

*Inc.*, No. IPR2013-00242, slip op. at 9 (P.T.A.B. Jan. 31, 2014), Paper No. 98.

This reading of § 315(b) is confirmed by our en banc decision in *Wi-Fi One*, in which we held that the provision sets forth a "condition precedent to the Director's authority to act," based on the "timely filing of a petition." 878 F.3d at 1374. Indeed, we observed that, "if a petition is not filed within a year after a real party in interest, or privy of the petitioner is served with a complaint, it is time-barred by § 315(b), and the petition *cannot be rectified* and *in no event* can IPR be instituted." *Id.* at 1374 n.9 (emphases added). This is so because § 315(b)'s time bar concerns "real-world facts that limit the agency's authority to act under the IPR scheme," reflecting Congress's "balancing [of] various public interests." *Id.* at 1374; *see id.* at 1377 (O'Malley, J., concurring) (explaining that "§ 315(b) codifies one of the 'important procedural rights' that Congress chose to afford patent owners in the IPR context" (quoting *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 791 (1985))). It is impossible to square *Wi-Fi One*'s "cannot be rectified" and "in no event" language with the possibility that subsequent events in the civil action might operate to "nullify" service of the complaint for the purpose of § 315(b)'s time bar.[4]

---

[4]    Although the stipulations of dismissal in this case were jointly entered by the predecessors of both CTC and Ingenio, we acknowledge that plaintiffs in civil suits can seek dismissal without prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure in certain circumstances without a court order and without any involvement by the defendant. This reality does not alter our conclusion that the subsequent dismissal of a civil action is irrelevant to whether a petitioner, real party in interest, or privy of the petitioner was previously "served with a complaint" within the meaning of § 315(b). To the

Moreover, adopting the Board's preferred construction of the phrase "served with a complaint" in § 315(b) "would impose additional conditions not present in the statute's text." *Return Mail, Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1363 (Fed. Cir. 2017) (citing *Norfolk Dredging Co. v. United States*, 375 F.3d 1106, 1111 (Fed. Cir. 2004), for its holding that courts must avoid "add[ing] conditions" to the applicability of a statute that do not appear in the provision's text). Congress specifically addressed the effect of a dismissal of an IPR petitioner's district court action in § 315(a)(2), but did not include any similar language in § 315(b). Congress also demonstrated that it knew how to provide an exception to the time bar by including a second sentence in the provision: "The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c)." 35 U.S.C. § 315(b). Similarly, Congress could have chosen to include a variation of the phrase "unless the action in which the complaint was served was later dismissed without prejudice," but it did not do so. We reject the Board's effort to graft this additional language into § 315(b). *Cf. Return Mail*, 868 F.3d at 1363 (rejecting appellant's argument, in part, because "Congress could have easily specified the phrase 'sued for infringement' to require being sued for infringement under 35 U.S.C. § 271 or otherwise excluded [28 U.S.C.] § 1498 suits from the definition of 'sued for infringement,' but it did not do so").

### b. Legislative History

The legislative history of § 315(b) further supports the understanding that its time bar concerns only the date on which the complaint was formally served. For example,

---

extent the parties debate whether the Board's interpretation of § 315(b) results in good policy, "who should win that debate isn't our call to make." *SAS*, 138 S. Ct. at 1358.

during the March 2011 Senate debates, Senator Kyl made clear that, under the version of § 315(b) then being considered, "if a party has been sued for infringement and wants to seek inter partes review, he *must do so* within 6 months of *when he was served* with the infringement complaint." 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) (emphases added). This unequivocal reference to the date on which an accused infringer was served suggests that Congress did not contemplate subsequent events "nullifying" § 315(b)'s time bar.

The legislative history also clarifies that Congress chose the date of service, as opposed to some other event, as the trigger for § 315(b)'s time bar because service of a complaint is the seminal notice-conferring event in a district court action. As the Supreme Court has explained, "the core function of service is to supply *notice* of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996) (emphasis added). During the September 2011 Senate debates, Senator Kyl offered the following justification for extending the previously contemplated six-month time bar to one year. He observed that companies, in particular those in the high-technology sector, "are often sued by [patentees] asserting multiple patents with large numbers of vague claims, making it difficult to determine in the first few months of the litigation which claims will be relevant and how those claims are alleged to read on the defendant's products." 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl). Recognizing that "[c]urrent law imposes no deadline on seeking inter partes reexamination," he reasoned that, "in light of the present bill's enhanced estoppels, it is important that the section 315(b) deadline afford defendants a *reasonable opportunity to identify and understand* the patent claims that are relevant to the litigation." *Id.* (emphasis added). Con-

gress, in "balancing various public interests," decided to use the "real-world fact[]" of when a petitioner, real party in interest, or privy of the petitioner was "served with a complaint" to trigger § 315(b).   *Wi-Fi One*, 878 F.3d at 1374.

### c.  Conclusion Regarding *Chevron* Step One

"Because a statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter."   *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998) (citations omitted); *see also Cuozzo*, 136 S. Ct. at 2142 ("Where a statute is clear, the agency must follow the statute.").   Here, the text of § 315(b) clearly and unmistakably considers only the date on which the petitioner, its privy, or a real party in interest was properly served with a complaint.   Because "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" our inquiry ceases and we need not proceed to *Chevron*'s second step.   *Barnhart*, 534 U.S. at 450 (quoting *Robinson*, 519 U.S. at 340).   Simply put, there is no gap to fill or ambiguity to resolve: "[w]here a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer."   *SAS*, 138 S. Ct. at 1355 (citing *Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 369 (1946)).

### 2.  The Board's Contrary Reasoning Is Unpersuasive

Notwithstanding the absence of any facial ambiguity in the phrase "served with a complaint," the Board concluded that CTC "has not established that service of the complaint in the infringement suit brought by Inforocket against Keen bars Ingenio, LLC from pursuing an *inter partes* review for the '836 patent."   JA. 288.   To support this conclusion, the Board wrote that the "Federal Circuit consistently has interpreted the effect of such dismissals as leaving the parties as though the action had never been brought," and cited this court's decisions in *Graves*,

294 F.3d at 1356, and *Bonneville*, 165 F.3d at 1364, and a section of Wright and Miller's Federal Practice and Procedure treatise. *Id.* The Board concluded that, "[a]ccordingly, the dismissal of the infringement suit brought by Inforocket against Keen—now Ingenio, LLC—*nullifies the effect of the service* of the complaint and, as a consequence, does not bar Ingenio, LLC or any of the other Petitioners from pursuing an *inter partes* review of the '836 patent." *Id.* (emphasis added).

The Board misunderstood that the text of § 315(b) is agnostic as to the "effect" of the service—i.e., what events transpired after the defendant was served. The provision only probes whether the petitioner, real party in interest, or privy of the petitioner *was* served with a complaint alleging patent infringement more than one year before the IPR petition was filed. We reject the Board's interpretation of § 315(b) for this reason alone.

Even if the provision could fairly be read to consider the "effect" of service—which it cannot—the Board's reliance on the cited authorities was erroneous.[5] We interpret the Board's reasoning as presupposing that the phrase "served with a complaint" is a legal term of art with some latent ambiguity, necessitating the reliance on additional interpretive aids. Assuming *arguendo* that the phrase is ambiguous, none of the authorities on which the Board relied help resolve this ambiguity because they each concern fundamentally different contexts, and consequently shed no light on "whether *service* of a complaint can be nullified." *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1301 (Fed. Cir. 2016) (recognizing that "we have held in other cases that dis-

---

[5] We ignore for the purpose of this appeal whether the Board improperly placed the burden of demonstrating that the IPR petition was time-barred on CTC, the patent owner.

missals without prejudice leave the parties as though the action had never been brought," but questioning "whether *service* of a complaint can be nullified").

Both *Bonneville* and *Graves* concern the dismissal of an appeal in a first proceeding and the extent to which that dismissal impacts the appellant's ability to initiate a later proceeding. In the former, Bonneville, after receiving an adverse decision from a contracting officer, filed a notice of appeal with the General Services Administration Board of Contract Appeals, but thereafter "withdr[e]w" its notice of appeal pursuant to the Board's rules to "pursue its appeal in the U.S. Claims Court." *Bonneville*, 165 F.3d at 1362. Before the Board actually dismissed the appeal without prejudice—under the condition that the dismissal would transform into one with prejudice unless Bonneville reinstated its appeal in three years—Bonneville brought suit in the Claims Court. *Id.* The Claims Court, however, dismissed the suit, holding that Bonneville's filing of the appeal to the Board constituted an election of remedies that barred Bonneville from subsequently invoking the court's jurisdiction. *Id.*

We affirmed the Claims Court's dismissal, *id.*, and ten days later, Bonneville sought to reinstate its appeal to the Board, arguing that it was complying with the three-year deadline set forth in the Board's dismissal order, *id.* at 1363. But the Board "applied the same principle that the federal courts had applied in construing the similar provision governing voluntary dismissals without prejudice in Federal Rule of Civil Procedure 41(a), namely, that an appeal so dismissed 'leaves the situation as if the suit had never been brought.'" *Id.* The Board therefore concluded that,

> because Bonneville voluntarily caused its appeal to be dismissed without prejudice in order to pursue the appeal in another forum, Bonneville is placed in the same position as if the first appeal

had never been filed. The second filing does not relate back to the date of the first filing. Moreover, as the second complaint filed on December 29, 1994 is a "new appeal" filed after the expiration of the CDA ninety-day time limit, it is untimely. We lack jurisdiction to hear this appeal.

*Id.*

We affirmed the Board's dismissal, finding no plain error in the Board's decision to treat Bonneville's dismissal without prejudice the same way that federal courts would have treated it under Rule 41(a). *Id.* at 1364. We then disagreed with Bonneville's criticism of the Board's rule as a "legal fiction," writing that its rule "merely states the *consequence* of a voluntary dismissal without prejudice, namely, that the appellant cannot thereafter resurrect the appeal after the statute of limitations on the cause of action has run." *Id.* (emphasis added).

*Graves* likewise concerns an appellant's effort to seek relief a second time beyond a limitations period. After Graves received an adverse decision from the Board of Veterans' Appeals, he, proceeding *pro se*, timely appealed to the U.S. Court of Appeals for Veterans Claims ("Veterans Court"). 294 F.3d at 1353. He thereafter retained counsel, who filed in the Veterans Court a document requesting dismissal without prejudice, but neither mentioning any rules of the Veterans Court nor indicating that Graves intended to seek reconsideration of the Board's decision. *Id.* The Veterans Court thereafter dismissed the appeal pursuant to Rule 42 of its Rules of Practice and Procedure. *Id.*

Graves then asked the Board to reconsider its initial decision, and after the Board denied this request, Graves appealed both the initial decision and the denial of his request for reconsideration to the Veterans Court. *Id.* The Veterans Court dismissed this appeal for lack of jurisdiction on the ground that it was untimely, pointing

out that, pursuant to 38 U.S.C. § 7266(a), Graves was required to file his notice of appeal with the Veterans Court within 120 days of the date the Board mailed its initial decision to him. *Id.* Citing an earlier decision, the Veterans Court observed that, if Graves had filed a motion for reconsideration with the Board within the 120-day judicial appeal period, the finality of the initial Board decision "would have been abated" and a new 120-day period would have begun to run on the date that the Board mailed him a denial of his motion for reconsideration. *Id.*

We affirmed, writing that "[t]he most fundamental problem" facing Graves "is the fact that, as a matter of law, once his appeal was dismissed—for whatever purpose and whether with or without prejudice—it was as if the appeal had never been filed." *Id.* at 1355–56. We noted that, in *Bonneville*, "the nullifying effect of a voluntary dismissal in accordance with Fed. R. Civ. P. 41(a)(1) was applied in the context of a General Services Administration Board of Contract Appeals dismissal," and concluded that "the rule is equally applicable to voluntary dismissals under Rule 42 of the Veterans Court." *Id.* at 1356. Thus, once Graves dismissed his initial appeal, "the Veterans Court no longer had jurisdiction over the action" and he "was barred from appealing" the Board's decision because "he was in the same situation that he would have been in if he had never filed a notice of appeal." *Id.*

These two cases are inapplicable to the issue presented in this appeal. Both concern whether an appellant's filing of a notice of appeal and subsequent dismissal of that appeal "tolls" the jurisdictional deadline to appeal from the decision below. The cases, relying on the principle that "[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to *render the proceedings a nullity* and leave the parties as if the action had never been brought,'" *Bonneville*, 165 F.3d at 1364 (emphasis added) (quoting *Williams v. Clarke*, 82 F.3d 270,

273 (8th Cir. 1996)), answer this question in the negative. More broadly, the background legal principle in these cases is that a party's voluntary dismissal of its action or appeal will not toll a statute of limitations, and, as a result, a subsequently filed action or appeal must still be brought within the original limitations period.

Here, by contrast, the appropriate question is whether the voluntary, without prejudice dismissal of a civil action in which a complaint had been served nullifies an administrative time bar that is triggered by service of that complaint. It does not. Yet the Board, without explanation, extended the background principle of *Graves* and *Bonneville* to conclude that such a dismissal "nullifies the effect of the service of the complaint." It then relied on this erroneous conclusion to "un-ring" § 315(b)'s time bar. In effect, the Board relied on cases holding that the voluntary dismissal of an action or appeal does *not* toll a statute of limitations to conclude that the voluntary dismissal without prejudice of a civil action *does* indefinitely toll § 315(b) and permitted an otherwise untimely IPR to proceed, turning *Bonneville* and *Graves* on their head.

These cases do not delve into the meaning of the terms "serve" or "complaint," nor do they hold that the voluntary, without prejudice dismissal of a civil action transforms the ordinary meaning of the phrase "served with a complaint" into something else. Although we "presume that 'Congress intended to retain the substance of the common law'" when "a statute covers an issue previously governed by the common law," *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 538 (2013) (quoting *Samantar v. Yousuf*, 560 U.S. 305, 320, n.13 (2010)), where the statutory scheme is clear, we are not to "invent an atextual explanation for Congress's drafting choices," *SAS*, 138 S. Ct. at 1357.

Where, moreover, the proposed atextual explanation is the alleged existence of a "background legal principle,"

that principle must both be firmly established and une-quivocal before it can justify ignoring the plain text of the statute. The background legal principle on which Petitioners and the Director rely—that a "dismissal without prejudice leaves the parties in the same legal position as if the underlying complaint had never been filed," for all purposes, Appellees Suppl. Br. 3—is anything but une-quivocal. A voluntary dismissal without prejudice only leaves the dismissed action without legal effect for *some* purposes; for many other purposes, the dismissed action continues to have legal effect. Indeed, a voluntary dismissal without prejudice (1) may give rise to costs and fees under Rule 11, *see* Wright & Miller, Federal Prac. & Proc. Civ. §§ 1336, 2367; (2) forbids the filing of a subsequent action "based on or including the same claim" under Rule 41(a)(1)(B); and (3) may establish the necessary case or controversy for a later declaratory judgment action, *see TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1300 (Fed. Cir. 2016) ("After 3M voluntarily dismissed [its] suit due to an apparent personal jurisdiction issue, TransWeb filed suit in New Jersey for declaratory judgment."). The Director itself acknowledges that the filing of a patent infringement complaint, even if later voluntarily dismissed, can play a role in proving the defendant's knowledge of the patent if charged with willful infringement. Intervenor's Second Suppl. Br. 8. And counsel for Petitioners admitted at oral argument that § 315(b) "appears to be unique relative to the other cases cited in that it involves the act of service triggering a limitations period," suggesting that there is no pertinent "background legal principle" that might alter our view of the plain and ordinary meaning of the phrase "served with a complaint." Oral Arg. at 22:13–22:29, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx ?fl=2015-1242.mp3.[6]

---

[6]   The background legal principle on which the Di-

For all of these reasons, we conclude that a defendant served with a complaint as part of a civil action that is voluntarily dismissed without prejudice remains "served" with the "complaint."  This remains true even if that action becomes a "nullity" for other purposes and even if such service becomes legally irrelevant in a subsequent court action.

### B.  Petitioners' Alternative Arguments

Petitioners also argue that, even if the Board erred in concluding that the voluntary dismissal of the district court action rendered § 315(b) inapplicable because the dismissal "nullifie[d] the effect of the service," the institution of the IPR proceeding was nevertheless proper for two independent reasons.  Although CTC initially posited that subsidiary factual questions precluded us from deciding in the first instance the merits of Petitioners' alternative arguments, Reply Br. 24, the parties (but not the Director) now agree that no further fact-finding is required.  We therefore address these arguments in turn. *See Killip v. Office of Pers. Mgmt.*, 991 F.2d 1564, 1568–69 (Fed. Cir. 1993) (recognizing, in the context of a Merit Systems Protection Board case, that we may "affirm the Board on grounds other than those relied upon in rendering its decision, when upholding the Board's decision does not depend upon making a determination of fact not previously made by the Board").

---

rector and Petitioners rely cannot be as absolute as they contend.  We have little doubt that a contract clearly and unambiguously providing for a payment to be due upon service of a complaint would render such payment due, and remaining due, upon service of a complaint that is later dismissed without prejudice.  A statutory bar that is clearly and unambiguously triggered by service of a complaint, such as § 315(b), is to the same effect.

### 1. The Impact of *Ex Parte* Reexamination

Petitioners first contend that, because the claims of the '836 patent were materially changed during a subsequent *ex parte* reexamination, neither they nor any other entity was served with a complaint alleging infringement of *this* patent more than one year before the IPR petition was filed. *See* Appellees Br. 8, 19–21. In particular, they claim that, "[b]ecause each claim of the reexamined patent substantively differs from the claims of the original patent, the reexamined '836 patent should be treated as a new patent for purposes of § 315(b)." *Id.* at 21.

Petitioners are mistaken. "Unlike reissue, reexamination does not result in the surrender of the original patent and the issuance of a new patent." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341–42 (Fed. Cir. 2012). Indeed, the relevant provision provides that a reexamination certificate "incorporat[es] *in the patent* any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a) (emphasis added). Petitioners' reliance on 35 U.S.C. § 307(b) is unavailing. That provision simply means that any amended or new claim incorporated in a reexamined patent has the same effect as that specified in 35 U.S.C. § 252 for a reissued patent only with respect to so-called "intervening rights." In other words, § 307(b) statutorily protects the ability of a "person or that person's successors in business" to continue to use, offer for sale, or sell anything protected by the amended or new claims, provided such actions do not infringe a valid claim of the reexamined patent that was in the original patent. *Compare* 35 U.S.C. § 307(b), *with* 35 U.S.C. § 252. Congress could have included in any of 35 U.S.C. §§ 252, 307(b), or 315(b) language regarding the effect of reexamination on the deadline to file an IPR—it chose not to do so.

Petitioners' emphasis on alleged differences in claim scope misunderstands that § 315(b) does not speak in

terms of claims. Instead, the provision asks on what date the petitioner, real party in interest, or privy of the petitioner "is served with a complaint alleging infringement *of the patent*," making clear that the timeliness analysis is to be made with reference to "the patent." The Director agrees with this conclusion. *See* Intervenor Second Suppl. Br. 10 n.3.

Even if we were to hold that § 315(b) is ambiguous with respect to whether the term "the patent" includes reexamined patents having amended or new claims of "substantively differ[ent]" scope than the original claims, we would still reject Petitioners' argument that the time bar does not apply here. We have held that, "in the absence of a clear showing that such a material difference in fact exists in a disputed patentable reexamination claim, it can be assumed that the reexamined claims will be a subset of the original claims and that no new cause of action will be created." *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1353 (Fed. Cir. 2014). We reached this holding after asking whether "it is possible that a reexamination could ever result in the issuance of new patent claims that were so materially different from the original patent claims as to create a new cause of action, but at the same time were sufficiently narrow so as not to violate the rule against reexamined claims being broader than the original claims." *Id.* Petitioners did not make any showing in the IPR proceeding that the amended or new claims of the '836 patent are "materially different" than the original claims, and we reject their unsupported effort to do so for the first time on appeal.

For these reasons, we reject Petitioners' effort to deem the reexamined '836 patent a "new patent" for § 315(b) purposes.

2. The Relevance of "Non-Barred" Petitioners

Petitioners also submit that, even if § 315(b)'s time bar applies to YP Interactive, it would not apply to Yel-

lowPages.com, Oracle Corporation, or Oracle OTC Subsidiary LLC. According to Petitioners, because YellowPages.com was not in privity with YP Interactive or its predecessors "before at least 2008," YellowPages.com never had any opportunity, as a privy or otherwise, to participate in the *Inforocket Action* or *Keen Action*, which were voluntarily dismissed years earlier. Appellees Br. 24. They also submit that the Oracle entities were not parties, real parties in interest, or privies of Ingenio with respect to these earlier proceedings. In Petitioners' view, these arguments are relevant because, if these entities *had* filed separate petitions, those petitions would not have been time barred under § 315(b). Moreover, they submit that, *had* YP Interactive filed a separate petition, the Director *could* have joined its petition with the hypothetical non-barred petitions pursuant to 35 U.S.C. § 315(c), rendering any error in the Board's § 315(b) determination vis-à-vis YP Interactive harmless.

We reject these efforts to separate YP Interactive from the other Petitioners to save the petition as to the latter. We need not scrutinize the legal relationships between YellowPages.com, Oracle Corporation, and Oracle OTC Subsidiary LLC, on the one hand, and Ingenio/YP Interactive, on the other, to address Petitioners' arguments. These four entities declared themselves as "the Petitioner" in their sole IPR petition, and certified that Ingenio (now YP Interactive) is a "real party in interest." J.A. 345. In these circumstances, under current law, Petitioners are properly treated as an undifferentiated unit that filed an untimely petition.

Section 315(b) and the implementing regulation both treat a petition as if there is a single petitioner for purposes of the one-year rule. Section 315(b) bars institution of an IPR where "the petition requesting the proceeding is filed more than 1 year after the date on which the *petitioner*, *real party in interest*, or privy of the petitioner is served with a complaint alleging infringement of the

patent." 35 U.S.C. § 315(b) (emphases added). The governing regulation, which largely parrots § 315(b), is to the same effect:

> [a] person who is not the owner of a patent may file with the [Patent & Trademark Office] a *petition* to institute an [IPR] of the patent *unless . . .* [*t*]*he petition* requesting the proceeding is filed more than one year after the date on which the petitioner, the petitioner's real party-in-interest, or a privy of the petitioner is served with a complaint alleging infringement of the patent.

37 C.F.R. § 42.101(b) (emphases added). Both the statute and the regulation ask only two questions: (1) when was "the petition" filed; and (2) when was "the petitioner," the petitioner's real party in interest, or a privy of the petitioner served with a complaint? They do not differentiate between multiple petitioners.

We read section 315(b), as implemented by the existing regulation, to apply petition-by-petition, not petitioner-by-petitioner, with the collection of petitioners on a single petition treated as a unit indistinguishable from each member of that collection. This reading of the statutory and regulatory reference to the singular "the petitioner" for the one-year time bar is supported by the fact that, in the same statutory scheme, Congress expressly recognized the possibility of multiple petitioners and permitted separate treatment of them for different purposes. *See, e.g.*, 35 U.S.C. § 317(a) (addressing continuation of IPR as to some petitioners after dismissal of others). In concluding that this is the best reading of the statute and its parroting regulation, we are not deciding whether the statute is ambiguous and could permissibly be implemented through a different regulation providing for separate treatment of multiple petitioners in assessing timeliness under the one-year time bar—a distinct question that would arise if the Director newly adopted such a

regulation. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–85 (2005) (holding that, where a court determines the "best reading" of a provision without finding an "unambiguous" meaning, the *Chevron* step one question is not answered, and an agency having *Chevron* authority may adopt a different statutory position and have it tested under the *Chevron* framework).[7]

Under the unitary-entity interpretation of section 315(b) and its implementing regulation, the petition at issue here was untimely. "The petitioner" (all four petitioners considered collectively) filed the single petition more than one year after YP Interactive (operating under the name Keen), which is itself both "the petitioner" and a real party in interest, was served with a complaint alleging infringement of the '836 patent. The Director was therefore barred from instituting this IPR based on this petition.

Because this IPR was not instituted properly, the final written decision was entered contrary to a statutory command and must be set aside. Petitioners cite nothing

---

[7] Were the Director or Board merely to interpret (rather than change) the current regulation to allow separate treatment of co-petitioners for § 315(b) purposes, that interpretation would not be owed deference in light of our interpretation of the existing regulation, given the statute-parroting nature of this regulation. *See Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) (ruling that "the existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute," and "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language").

to support a conclusion that the error in instituting on this petition could be deemed harmless just because a different petition might have been filed that would have permitted institution of a different IPR to review the same patent claims. Indeed, that circumstance would often be the case, since any "person who is not the owner of a patent" may file a petition for an IPR. 35 U.S.C. § 311(a). Accordingly, what matters here is whether *this* petition provided a lawful basis upon which to institute this IPR. *Cf. SAS*, 138 S. Ct. at 1358 n.* (explaining that the possible existence of a different path to the same agency result—there, partial institution—did not validate the path actually followed). Section 315(b), as implemented by the current regulation, is best understood to answer that question no.

Petitioners' additional reliance on §§ 315(c) and 317(a) in an effort to save this petition as to some petitioners does not persuade. Petitioners' § 315(c) theory would seem to be that the petition may be viewed as having been filed solely by the Oracle and YellowPages.com petitioners and merely joined by YP Interactive, so that the timeliness determination could disregard YP Interactive. Petitioners' § 317(a) theory would seem to be that YP Interactive might be dropped from the IPR, leaving only the other petitioners, as to which the Board may continue. As already noted, however, the availability of a path not taken does not validate the path actually taken. *SAS*, 138 S. Ct. at 1358 n.*. Although § 315(b) provides that its time bar "shall not apply to a request for joinder under subsection (c)," it is undisputed that no such "request for joinder" was made in this case. Indeed, the regulation governing joinder requires that "[a]ny request for joinder *must* be filed . . . no later than one month after the institution date of any [IPR] for which joinder is requested." 37 C.F.R. § 42.122(b) (emphasis added). This one-month deadline, which the Director imposed by regulation after notice and comment, *Changes to Implement Inter Partes*

*Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680–01, 48,681, 2012 WL 3276880 (Aug. 14, 2012), has long since passed.[8]

Similarly, while § 317(a) permits the termination of IPR proceedings that have been instituted "with respect to any petitioner"—and even permits the Office to "proceed to a final written decision" where "no petitioner remains in the inter partes review"—such termination can only occur "upon the joint request of the petitioner and the patent owner unless the Office has decided the merits of the proceeding before the request for termination is filed." No joint request for termination was made in this case. The fact that Congress afforded petitioners the opportunity to settle with patent owners after institution does not address the predicate question of whether the IPR was properly instituted in the first place.

Further support for our reading of § 315(b) is found in decisions of the Board's own panels. In *Terremark North*

---

[8] We recognize that a number of Board panels have constrained joinder in apparent recognition of a tension between §§ 315(b) and (c). Where an otherwise time-barred petitioner seeks to join an IPR under § 315(c), Board panels consistently have granted such requests only under limiting conditions, such as (1) that the party seeking joinder "maintain a secondary role in the proceeding," *Pfizer, Inc. v. Biogen, Inc.*, No. IPR2017-01115, 2017 WL 3081981 (P.T.A.B. July 18, 2017), Paper No. 13; or (2) that they appear in the IPR proceeding and attend depositions and oral hearing, but not file papers, engage in discovery, or participate in any deposition or oral hearing, *Ion Geophysical Corp. v. WesternGeco LLC*, No. IPR2015-00565, 2015 WL 1906173, at *4 (P.T.A.B. Apr. 23, 2015), Paper No. 14. There was no such limitation on YP Interactive's participation in this IPR.

*America LLC v. Joao Control & Monitoring Systems, LLC*, No. IPR2015-01482, 2015 Pat. App. LEXIS 12695 (P.T.A.B. Dec. 28, 2015), Paper No. 10, the panel confronted a situation involving multiple petitioners seeking institution of an IPR, in which some but not all of the petitioners were time-barred. In that case, CoxCom was the only petitioner that was not served with a complaint more than one year before the IPR petition was filed. 2015 Pat. App. LEXIS 12695, at *19. The petitioners argued that, because CoxCom was not time-barred, § 315(b) should not apply to the jointly filed IPR petition. *Id.* The Board rejected this argument based on the reasoning set forth in an earlier decision, *PNC Bank, N.A. v. Maxim Integrated Products, Inc.*, No. CBM2014-00041, 2014 WL 2536982, at *2 (P.T.A.B. June 3, 2014), Paper No. 19, in which the Board denied institution of CBM review where PNC Bank was "both a petitioner . . . and a real party in interest," and previously filed a civil action challenging the validity of claims of the challenged patent. *Id.* at *2. This set of facts resulted in institution being barred under § 325(a)(1), notwithstanding that other named petitioners were not barred by this provision. *Id.* The Board held that, as a result, "§ 325(a)(1) precludes institution of a review in this proceeding," notwithstanding that other named petitioners were not barred by this provision. *Id.*

Notably, the Board also considered, but rejected, the petitioners' argument that § 325(a)(1) would not bar institution if PNC were to "forswear all further control and participation in this case" or have adverse judgment entered against it, permitting the other petitioners to proceed without its involvement.[9] *Id.* The Board rea-

---

[9]   37 C.F.R. § 42.73(b) provides that "[a] party may request judgment against itself at any time during a proceeding."

soned that, because "PNC has already exerted substantial control over the case" and because "granting PNC's request for adverse judgment would not obviate the control that PNC has already exerted in this proceeding by its filing of the Petition," ruling upon PNC's motion for judgment "would not alter [its] conclusion that § 325(a)(1) precludes institution of a CBM review as requested in the Petition." *Id.*[10]

Turning back to *Terremark*, the Board there wrote that the non-CoxCom petitioners, like PNC, "already have exerted substantial control over the case by participating in filing the Petition, appointing counsel, etc.," and therefore "[t]he presence of CoxCom . . . does not remove the statutory bar." 2015 Pat. App. LEXIS 12695, at *21. Here, too, "removing" Ingenio/YP Interactive from the IPR would not alter the fact that it has participated for several years in this proceeding in violation of § 315(b). Appellees' unsupported assertion that there is nothing about the relationship between these parties that indicates control over the other joint petitioners by Ingenio/YP Interactive does not change our view. Where the parties choose to be joint petitioners in a single petition, the petition must—under current law—be assessed in light of that choice.

In conclusion, to the extent Petitioners rely on §§ 315(b), 315(c), and 317(a) to argue that the Board's

---

[10]   At oral argument, counsel for the Director was unable to articulate why the fact that *PNC* involved CBM review, rather than an IPR, was relevant, given that the applicable statutes are similarly worded. *See* Oral Arg. at 33:45–33:55. Nor did counsel for the Director or for Petitioners explain why additional fact-finding (or remand) would be necessary on the issue of Ingenio/YP Interactive's control over or active involvement in this IPR proceeding.

institution of IPR proceedings in this case was "harmless," we have made clear that "[t]he timely filing of a petition under § 315(b) is a condition precedent to the Director's authority to act"—indeed, it "sets limits on the Director's statutory authority to institute." *Wi-Fi One*, 878 F.3d at 1374. There is nothing "harmless" about the institution of this IPR in excess of statutory authority and contrary to "the law's demands." *SAS*, 138 S. Ct. at 1359.

Finally, we conclude that a remand for consideration of this multi-petitioner issue is not warranted. Neither Petitioners nor CTC seek a remand for further Board proceedings. That fact is significant not only because of the IPR regime's general policy of expedition, *see* 35 U.S.C. §§ 314(b), 316(a)(11), but also because the IPR regime creates "a party-directed, adversarial process" rather than an "agency-led, inquisitorial process," *SAS*, 138 S. Ct. at 1355. After all, "it's the petitioner, not the Director, who gets to define the contours of the proceeding." *Id.*

Only the Director suggests a remand on this issue. But the Director identifies no material facts requiring further development on remand. And, the Director has not explained exactly what the Board might wish to, or be able to, consider on remand. The issue in this case thus raises only a legal question, and under current law, including the current regulation, the answer to the legal question is already determined in this opinion. The Board must follow the governing regulations, *see*, *e.g.*, *Creditor v. Shulkin*, 877 F.3d 1040, 1047 (Fed. Cir. 2017), and it must follow our binding interpretation where, because the regulation merely parrots the statute, deference is not owed even to the Director's interpretation of the regulation, much less to a Board panel's interpretation, *see supra* n.6 (quoting *Gonzales v. Oregon*). *See In re Lovin*, 652 F.3d 1349, 1353–54 (Fed. Cir. 2011) (discussing *Brand X* and agency's duty to follow judicial interpretation of regulations generally, but deferring to intervening

change of regulation).  It is conceivable that the Director might promulgate a new regulation during remand—though the Director has not even taken a position on this issue, much less suggested that a regulation is on the horizon, and there would be a question about retroactive application of any such changed regulation.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988).  We know of no authority or sound basis to support a remand to allow for a possible intervening change of law, especially in the context of a statute prizing expedition.  We therefore vacate the Board's *Final Written Decision* and remand so the Board can dismiss this IPR proceeding.  We leave Petitioners to litigate the merits of the '836 patent in the long-stayed district court case, where there will be no estoppel bar to such litigation, as CTC has expressly conceded.

### III. CONCLUSION

For the foregoing reasons, we vacate the Board's *Final Written Decision* and remand for the Board to dismiss IPR2013-00312.

### VACATED AND REMANDED

### COSTS

Costs to Click-to-Call Technologies, LP.

# United States Court of Appeals
# for the Federal Circuit

_____

**CLICK-TO-CALL TECHNOLOGIES, LP,**
*Appellant*

**v.**

**INGENIO, INC., YELLOWPAGES.COM, LLC,**
*Appellees*

**ANDREI IANCU, UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,**
*Intervenor*

_____

2015-1242

_____

Appeal from the United States Patent and Trademark
Office, Patent Trial and Appeal Board in No. IPR2013-
00312.

_____

TARANTO, *Circuit Judge*, concurring.

I join the panel's opinion in full. Here I add a few
thoughts on why I am unpersuaded by the key rationales
set forth in the dissent from the court's en banc holding.

The en banc issue is governed by statutory language
that, as the panel opinion explains, is plain in its mean-
ing. In September 2001, Ingenio (then called Keen) was
served with a complaint asserting that it infringed the

'836 patent, and there is no dispute about the content of the complaint or the propriety of service. In 2013, Ingenio filed a petition for an inter partes review (IPR)—far more than one year after the 2001 service. With respect to the en banc issue, those facts make § 315(b)'s time bar applicable by its plain terms. Nothing in that language makes relevant whether the 2001 complaint was eventually dismissed voluntarily without prejudice; the fact that service occurred does not change when the complaint (or action) is later dismissed, whether voluntarily or otherwise, and whether with or without prejudice to the right to file another action on the same claims. No other provision of the statute calls for a different conclusion. Indeed, whereas Congress in § 315(a)(2)(C) specifically addressed the effect of a voluntary dismissal of an IPR petitioner's own district court complaint challenging a patent, Congress left § 315(b) unmodified by any language addressed to dismissals of patentees' complaints.

This is not a case where the scope of a word or phrase in the statute, considered alone and in context, "may be open to competing interpretations" as in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011), and *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006). In *Kasten*, the Court addressed a genuine textual issue about whether the phrase "filed any complaint" in 29 U.S.C. § 215(a)(3) encompasses an oral complaint or instead requires a writing. 563 U.S. at 7. In *Dolan*, the Court addressed a genuine textual issue about whether the phrase "negligent transmission" of the mail, when read in the context of the statute, encompassed what might be the last act of the transmission—a negligent placement of a package on a porch. 546 U.S. at 486.

Numerous authorities state that statutory language as plain in its meaning as to an issue as is § 315(b), when read alone and in context, is controlling on that issue, subject to very narrow exceptions. *See*, *e.g.*, *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1357 (2018) ("We need not and

will not invent an atextual explanation for Congress's drafting choices when the statute's own terms supply an answer. See *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41 (1989) ('[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute').'' (alteration in original) (unofficial reporter citations omitted)); *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S. Ct. 1061, 1072 (2018) ("Even assuming clear text can ever give way to purpose, [the Director] would need some monster arguments on this score to create doubts about [§ 315(b)'s] meaning."); *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017); *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) ("when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms") (alteration in original) (internal quotation marks omitted); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002); *Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986).

I see no basis strong enough to justify the proposed contrary-to-text result urged by the Director—that § 315(b) becomes inapplicable when the complaint whose service would otherwise bar the IPR was dismissed voluntarily without prejudice under Rule 41(a) of the Federal Rules of Civil Procedure. Respecting § 315(b)'s plain meaning leaves the statutory scheme "coherent and consistent," *Barnhart*, 534 U.S. at 450; *Ron Pair Enters.*, 489 U.S. at 240, and without "absurd" results, *Sebelius*, 569 U.S. at 381. I therefore agree that the Director's position must be rejected and the task of making any advisable adjustments left to Congress.

## I

The principal rationale offered to support the Director's position is that a background rule of law exists that Congress must have intended to modify § 315(b)'s plain meaning. The asserted "rule" is that "[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) is to render the proceedings a nullity and leave the parties as if the action had never been brought." *Bonneville Assocs., Ltd. P'ship v. Barram*, 165 F.3d 1360, 1364 (Fed. Cir. 1999) (*Bonneville II*) (alteration in original) (internal quotation marks omitted). This court has also stated the point in terms seemingly applicable even to an *involuntary* dismissal without prejudice. *Graves v. Principi*, 294 F.3d 1350, 1356–57 (Fed. Cir. 2002) ("[A]s a matter of law, once his appeal was dismissed—for whatever purpose and whether with or without prejudice—it was as if the appeal had never been filed. . . . The dismissal of an action without prejudice leaves the parties as though the action had never been brought."). The Director invokes those formulations as providing a "solidly grounded rule" of civil procedure, *Greenlaw v. United States*, 554 U.S. 237, 250 (2008), that Congress must have understood would override the contrary plain meaning of § 315(b) by nullifying the time-bar effect of service of a complaint if that complaint is later voluntarily dismissed without prejudice.

But this court has already observed that the cases articulating an "as if never brought" principle do not "address § 315(b) or whether *service* of a complaint can be nullified." *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1301 (Fed. Cir. 2016). And even aside from the distinction between nullifying the effect of a complaint's service and nullifying the effect of a complaint's filing, the case law invoked by the Director (and the dissent) does not justify overriding the plain meaning of the § 315(b) bar.

The fundamental problem with the Director's position is that it takes judicial language used as explanation in particular contexts and mistakenly treats the language as establishing a rule sweeping enough to apply to the § 315(b) context. That is a mistake here because the federal courts do not *always* treat a voluntary, without-prejudice dismissal as leaving the dismissed action without legal effect. Only for some purposes does a voluntary, without-prejudice dismissal leave the dismissed action without legal effect, as if it had never been brought; for other purposes, the dismissed action continues to have legal effect. And the legal effect at issue for § 315(b)—triggering the start of a clock for filing an action—has never been in the first category. The Director has noted that he knows of no case holding that a voluntary, without-prejudice dismissal of a complaint nullifies the statutory effect of the filing of that complaint (or, here, of its service) of starting a clock on initiating another proceeding. Oral Arg. at 30:08–31:20. We cannot soundly infer a nontextual exception to § 315(b)'s plain-meaning application based on a nullification principle that has not been applied, and certainly is not established, in the clock-starting situation present here.

## A

Some of this court's and other courts' cases deny certain legal effects to the filing of a complaint later voluntarily dismissed without prejudice. One such effect concerns what is needed to *satisfy* (or toll) a time limit on initiating an action or appeal. The rationale is simple. A particular case or appeal must *itself* be initiated within a prescribed time. A filing that initiated an earlier case or appeal, if voluntarily dismissed without prejudice, does not meet, or toll the running of the clock for meeting, the time limit for filing the document that initiates the later (even substantively identical) case.

This court so held in *Bonneville II*, a government-contract dispute in which Bonneville timely appealed to the General Services Administration Board of Contract Appeals; voluntarily dismissed that appeal to pursue relief in the Claims Court instead; was denied a forum for lack of jurisdiction there (as this court held in *Bonneville Assocs. v. United States,* 43 F.3d 649, 655 (Fed. Cir. 1994) (*Bonneville I*)); and then returned to the Board by filing a new appeal. This court in *Bonneville II* held that the new appeal was untimely because the earlier Board appeal did not count to meet the applicable time limit for an appeal to the Board. 165 F.3d at 1363–65. In the same vein, we held in *Graves* that the time limit for appealing to the Veterans Court, 38 U.S.C. § 7266(a), had to be met by the notice of appeal initiating that appeal, and could not be met by an earlier, voluntarily dismissed notice of appeal from the same Board of Veterans' Appeals decision. 294 F.3d at 1355–56. Other circuits' decisions are to the same effect in not allowing the satisfaction, or tolling, of a limitations period by an earlier filing that is voluntarily dismissed without prejudice.[1]

---

[1]    *See, e.g.*, *Jorge v. Rumsfeld*, 404 F.3d 556, 563 (1st Cir. 2005) ("[A] prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice."); *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir. 1995) ("A dismissal without prejudice does not toll a statute of limitations."); *Beck v. Caterpillar Inc.*, 50 F.3d 405, 407–08 (7th Cir. 1995) (holding that the statute of limitations was not tolled and continued to run when plaintiff voluntarily dismissed his first suit under Rule 41(a)); *Simons v. Sw. Petro-Chem, Inc.*, 28 F.3d 1029, 1030 (10th Cir. 1994) (holding that the plaintiff's Title VII claim was not timely filed because her earlier case that was voluntarily dismissed without prejudice under Rule 41(a)(2) did not toll the statutory limitations period);

But the § 315(b) en banc issue does not involve the legal effect of the type at issue in the cases just described. A legal effect of that type would be at issue if an IPR petitioner filed a petition within the one-year period, voluntarily dismissed the petition without prejudice, then filed another IPR petition outside the period: the earlier (timely) petition would be disregarded in assessing the timeliness of the later petition. Here, there were no successive IPR petitions, and the issue is not whether a

---

*Robinson v. Willow Glen Acad.*, 895 F.2d 1168, 1169 (7th Cir. 1990) (holding that a tolling provision under Wisconsin state law that was tied to the "commencement of an action" did not apply if that action was then voluntarily dismissed under Rule 41(a)(2)); *Davis v. Smith's Transfer, Inc.*, 841 F.2d 139, 140 (6th Cir. 1988) (per curiam) (no tolling of statute of limitations based on earlier suit dismissed under Rule 41(a)); *Dupree v. Jefferson*, 666 F.2d 606, 610–11 (D.C. Cir. 1981) (taking note of the "rule" "that a statute of limitations is not tolled during pendency of an action voluntarily dismissed without prejudice"); *Curtis v. United Transp. Union*, 648 F.2d 492, 495 (8th Cir. 1981) (stating "the rule that the entry of a voluntary dismissal without prejudice leaves the action as if suit had never been brought for purposes of the statute of limitations"); *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir. 1959) (holding that a voluntary dismissal under Rule 41(a)(2) does not toll the statute of limitations under the Federal Tort Claims Act).

*See also Willard v. Wood*, 164 U.S. 502, 523 (1896) (noting "[t]he general rule in respect of limitations . . . that if . . . [an] action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred"); 8 Moore's Fed. Prac. Civ. § 41.33(6)(d) (2018); 9 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2367 (3d ed. 2018).

voluntarily dismissed filing could be treated as satisfying the one-year rule.

Rather, the issue is whether the 2001 service of a complaint asserting that Ingenio infringed the '836 patent should be treated as losing its clock-*starting* legal effect for filing an IPR before the Board, just because the properly served complaint was later voluntarily dismissed without prejudice. None of the just-cited cases involved that legal effect. Indeed, while those cases insist on *enforcing* a time limit on initiating legal proceedings for the same or similar claims brought by the same party in (usually) the same forum, the Director's position here would have the opposite effect of nullifying a time limit— and doing so based on the filing of different claims (invalidity, not infringement) by a different party (accused infringer, not patent owner) in a different forum (Board, not district court). In multiple ways, then, the main line of authority invoking the "as if never brought" rationale does not apply to the circumstances addressed by § 315(b).

The clock-starting effect that is at issue here is also different from certain other legal effects that are denied to a complaint once it has been voluntarily dismissed without prejudice. Notably, once a complaint has been voluntarily dismissed without prejudice, most further action in the very case initiated by that complaint is neither required nor permitted.[2] Relatedly, as indicated by the

---

[2]    *See, e.g.*, *In re Matthews*, 395 F.3d 477, 480 (4th Cir. 2005) ("[A]fter an action is voluntarily dismissed, the court lacks authority to conduct further proceedings on the merits."); *Williams v. Clarke*, 82 F.3d 270, 272–73 (8th Cir. 1996) (holding that voluntary dismissal under Rule 41(a)(1) applies to habeas corpus petitions filed under 28 U.S.C. § 2254 and strips the appellate court of jurisdiction over the action); *Norman v. Arkansas Dep't of Educ.*, 79 F.3d 748, 751 (8th Cir. 1996) (holding that after the

"without prejudice" language, invocation of issue or claim preclusion is generally not available based on the action that was voluntarily dismissed without prejudice.[3]  Those legal effects are not what is at stake here.

---

district court dismissed the case without prejudice, it "lacked jurisdiction to take any further action in it, including dismissing the case with prejudice"); *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) (holding that the voluntary dismissal of a claim in the bankruptcy court under Fed. R. Bankr. P. 3006 strips the bankruptcy court of its equitable jurisdiction and restores the dismissed party's jury-trial right); *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir. 1976) (explaining that a plaintiff generally cannot appeal a voluntary dismissal without prejudice under Rule 41(a)(2), but may appeal if the order has the effect of being a dismissal with prejudice).

[3]     *See, e.g.*, *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 (5th Cir. 2005) (holding that a voluntary dismissal under Rule 41(a)(1) does not result in a final judgment that could support collateral estoppel or the relitigation exception under the Anti-Injunction Act);  *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 32–34 (1st Cir. 2005) (holding that claim preclusion did not apply to claims that had been voluntarily dismissed under Rule 41(a)(1)(ii) by joint stipulation of the parties); *In re Corey*, 892 F.2d 829, 835 (9th Cir. 1989) (holding that a voluntary dismissal without prejudice "has no res judicata effect"); *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 219–20 (8th Cir. 1977) (holding that the district court erred by giving preclusive effect to the denial of class action status under Rule 23(c) in another case that had been subsequently dismissed without prejudice pursuant to Rule 41(a)(1)(i), because there was no "valid and final judgment" necessary for "collateral estoppel").  *Cf. Navellier v. Sletten*, 262 F.3d

B

As just set forth, although a voluntary, without-prejudice dismissal has been held to eliminate some legal effects of a dismissed action, the clock-starting effect of § 315(b) is not among them. Nor does the law recognize a universal nullification rule that such a dismissal eliminates all legal effects of a dismissed action. To the contrary, in various circumstances, such a dismissed action has continuing legal effects, *i.e.*, is *not* treated as if it had never been brought.

For example, Rule 41 itself makes clear that a first voluntary dismissal has an effect in forbidding a without-prejudice dismissal of a second action "based on or including the same claim." Fed. R. Civ. P. 41(a)(1)(B). Rule 41 adds that a first such dismissal may give rise to a court-imposed requirement that the costs of the first action be paid as a precondition to litigation of a second action based on or including the same claim against the same defendant. Fed. R. Civ. P. 41(d). And a voluntary, without-prejudice dismissal may give rise to costs and fees under Rule 11. *See* Wright & Miller, §§ 1336, 2367.

Continuing effects are also evident in sources outside the Federal Rules of Civil Procedure. For example, as the Director appears to acknowledge, the filing of a patent infringement complaint, even if later voluntarily dismissed, can play a role, even a definitive role, in proving the defendant's knowledge of the patent if the defendant is later charged with willful infringement. Intervenor's Second Supp. Br. 8 ("[D]ismissing a complaint without prejudice could have ongoing legal consequences because,

---

923, 938 (9th Cir. 2001) (finding no abuse of discretion in district court's voluntary dismissal of claims under Rule 41(a)(2) and holding that the court did not have to inform the jury that the dismissed claims might later be refiled).

for example, the notice turns a defendant's unwitting actions into intentional ones."); *see also* Fed. R. Evid. 201(b)(2) (allowing judicial notice of facts from "sources whose accuracy cannot reasonably be questioned"). And as the panel opinion notes, the filing of such a complaint, though later voluntarily dismissed, has formed the basis for declaratory judgment jurisdiction where the initial defendant later brings a validity challenge: the initial action by the patentee may establish the necessary case or controversy for the later action. *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1300 (Fed. Cir. 2016).

Another continuing effect is evident in the context of 28 U.S.C. § 1500. The Supreme Court in *Keene v. United States* addressed the § 1500 bar on the Court of Federal Claims's jurisdiction over a case when, at the time of its filing, a sufficiently related action is pending in another court, and the Court held that the bar continues to apply even after the other court action has been voluntarily dismissed without prejudice. 508 U.S. 200, 203, 207–09 (1993); *see* Brief for the United States, *Keene Corp. v. United States*, No. 92-166, 1993 WL 290106, at *3 (filed Jan. 25, 1993). The other court action, though voluntarily dismissed without prejudice, is not treated in that context as if it had never been brought.

Similarly, in *Flowers v. Secretary of the Department of Health and Human Services*, which involved a Vaccine Act provision barring certain benefits if a plaintiff had certain related actions pending, this court held that the bar applied even after the other actions were voluntarily dismissed without prejudice. 49 F.3d 1558, 1560–62 (Fed. Cir. 1995). The earlier actions were not treated as if never brought. And in *Bonneville I*, this court held that the Claims Court lacked jurisdiction over Bonneville's claim because Bonneville had initially brought an appeal to the Board and had therefore elected that forum—even though Bonneville had later obtained a voluntary, with-

out-prejudice dismissal of its Board appeal.  43 F.3d at 651, 653–55.  The earlier action, though it had been voluntarily dismissed without prejudice, blocked the Claims Court case—the opposite of being treated as if it had never been brought.

## C

In short, the background law on the nullification effect of a voluntary, without-prejudice dismissal is a mixed bag, and it does not state a near-monolithic rule with only aberrational exceptions.  Some effects are nullified, some not.  More particularly, it is anything but established—in fact, the Director has acknowledged the absence of any authority holding—that such a dismissal nullifies the legal effect at issue here: a clock-starting effect prescribed by statute.  In these circumstances, I conclude, there is no basis in the asserted background law for overriding the plain meaning of § 315(b).

## II

When the Director moves beyond his argument about background law, he presents nothing to indicate a clear congressional intent contrary to the plain meaning. Legislative history indications of congressional policy at most establish that § 315(b) is generally based on an assessment of the period suitable for a formally accused infringer (or privies or real parties in interest) to shape any IPR petition after formally receiving notice of a patentee's charges of infringement, with the patentee and district courts thereafter given repose against IPR petitions filed by that accused infringer (or privies or real parties in interest).  *See* 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl) (stating that the "section 315(b) deadline afford[s] defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation"); H.R. Rep. No. 112-98, at 48 (2011), *reprinted in* 2011 U.S.C.C.A.N. 67, 78 (expressing concern about use of IPR proceedings as a "tool[]

for harassment" by "repeated litigation and administrative attacks"). Those policies do nothing to undermine the plain meaning of the text: a bright-line rule of one year from service is a sensible prescription for serving those purposes.[4]

The dissent suggests that, when an action is voluntarily dismissed without prejudice, "the accused infringer is led to think that the controversy has dissipated" and "the notice function of the filing is effectively eliminated." Dissent at 11. Those suggestions, even if accepted on their own terms, do not establish the kind of incoherence or absurdity that would support adoption of an exception for voluntary dismissals without prejudice. Congress can sensibly choose a bright-line rule based on underlying notice concerns. In any event, the suggestions are, I think, weak on their own terms. The point of a dismissal "without prejudice" is to preserve, rather than eliminate, the ability of the plaintiff to sue the defendant again on the same claim. No defendant, if not given something more, such as a covenant not to sue, can reasonably understand a without-prejudice dismissal to give repose as to future assertion of that very patent; no defendant in that situation is entitled "to think that the controversy

---

[4]    Several legislators opposed § 315(b) in the House bill for exactly that reason, explaining that § 315(b)'s bright-line "12-month deadline" is not "tied to substantive progress in patent litigation, such as the entry of an order by the district court construing the relevant patent claims," and arguing that a strict 12-month deadline is "arbitrary" as it "does not account for the complexity of many patent cases that can encompass dozens of patents and defendants and hundreds of separate patent claims." H.R. Rep. No. 112-98, at 164–65. A proposed amendment offered by one of those legislators to tie the deadline to entry of a claim construction order failed. *Id.* at 58.

has dissipated." Indeed, as already noted, the bringing of an infringement suit, even if later voluntarily dismissed, can play a role, even a decisive role, in establishing the case or controversy needed for the once-accused infringer to bring an action for a declaratory judgment.

The dissent and the Director (in the *Luminara* case to which the dissent refers) suggest another reason that the statutory purpose requires an exception to § 315(b) for service of a complaint that is later voluntarily dismissed without prejudice. Specifically, they suggest a possibility of manipulative abuse if § 315(b) is applied in accordance with its terms, without such an exception. Dissent at 12; Oral Arg. at 19:45–20:22, *Luminara Worldwide, LLC v. Iancu*, Nos. 17-1629, -1631, -1633 (Fed Cir. Apr. 5, 2018). The scenario of abuse is this: A patent owner could sue many possible infringers, serve them with complaints, and then quickly and unilaterally dismiss all of those cases under Rule 41(a)(1)(A)(i), which applies before the filing of an answer or motion for summary judgment. Such a unilateral dismissal would start the one-year IPR clock for all such defendants under § 315(b), were there no exception. After the year had elapsed without any of those defendants filing an IPR challenge, the patent owner could again sue any of them on the same patent, without fear of an IPR initiation by any of them (or their privies or real parties in interest), though others could file IPR challenges.

This hypothesized scenario cannot support the suggested inference that Congress, to avoid such abuse, must have silently prescribed an exception to § 315(b) for voluntary dismissals without prejudice. Notably, the scenario is purely hypothetical, as far as we know. We have been pointed to no evidence that any patent owners have behaved in the way posited.

"[T]he Court rarely invokes [an absurd results] test to override unambiguous legislation." *Barnhart v. Sigmon*

*Coal Co., Inc.*, 534 U.S. 438, 459 (2002). The stringency of this test for overcoming plain meaning reflects a strong deference to the legislature as the instiution for identifying and curing defects in laws. *See SAS*, 138 S. Ct. at 1358 ("whatever its virtues or vices, Congress's prescribed policy here is clear"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 237–39 (2012) (explaining that "error-correction for absurdity can be a slippery slope" and that the absurdity doctrine should accordingly be narrow). I do not think that the merely hypothetical possibility of the abuse posited here makes the bright-line rule in § 315(b) absurd or incoherent. *Cf. Silva-Hernandez v. U.S. Bureau of Citizenship & Immigration Servs.*, 701 F.3d 356, 363–64 (11th Cir. 2012) (ruling that hypothetical scenarios did not show absurdity sufficient to reject a provision's plain meaning).

That is especially so because there are reasons to doubt the likely significance of the hypothesized scenario even beyond the fact that it has not yet shown up in reality. The scenario posits that the initially sued defendants, although already sued once on the patent, would decide to rely on the belief that they are substantially unlikely to be sued on it again—a premise that is dubious given that the initial dismissal was specifically without prejudice to the patentee's right to file again, there has been no covenant not to sue, and the posited legal stratagem for avoiding IPRs is apparent. Without such (doubtful) reliance, it is plausible that one or more of the defendants would initiate IPR challenges to the patent at issue within the one-year period, defeating the posited scheme of the patentee. The assumptions of legal ignorance, naiveté, or uniform fingers-crossed risk assessment seem strained.

The posited scenario also requires downplaying evident risks to the patentee of implementing the scheme. By suing many defendants in the first place, the patentee would be expanding the pool of persons objectively threat-

ened by the patent, which would seem to increase the likelihood of an early IPR challenge and to lower the cost of an IPR for any individual defendant if the defendants file jointly. That risk to the patentee further diminishes the likelihood of the abuse scenario. So does the risk that the patentee would face sanctions—in the initial litigation or later litigation—for acting as posited in the scenario. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991) (explaining that inherent power "extends to a full range of litigation abuses"); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) (discussing power to sanction the "willful[] abuse [of] judicial processes"); *Willy v. Coastal Corp.*, 503 U.S. 131, 136–37 (1992) (discussing sanction power even where court lacked jurisdiction); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990) (post-dismissal sanction power); *Winslow v. Hunter (In re Winslow)*, 17 F.3d 314, 315 (10th Cir. 1994) (per curiam) (discussing sanctions for "a pattern of litigation activity which is manifestly abusive") (quoting *Johnson v. Cowley*, 872 F.2d 342, 344 (10th Cir. 1989)).

Finally, and in any event, the hypothetical abuse scenario cannot support adoption of the particular judicial modification of § 315(b)'s plain terms proposed by the Director—which is a gross mismatch for the abuse scenario. The suggested exception to § 315(b) would go far beyond dismissals under Rule 41(a)(1)(A)(i), which are the only ones the plaintiff can effectuate unilaterally. The suggested exception would also cover voluntary, without-prejudice dismissals under Rule 41(a)(1)(A)(ii)—which are within the control of the defendant (later petitioner)—and under Rule 41(a)(2)—which are within the control of the court. Unilateral manipulation is not possible under those provisions: for all of those dismissals, the defendant and the court have power to protect against the posited abuse. (The present case involved a non-unilateral dismissal.) There is no basis for inferring, or adopting, a

nontextual exception that extends far beyond a very limited scenario of merely hypothetical potential abuse.

* * *

In sum, I think that the statutory issue in this case falls within the principle that "where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended." *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929). If there turns out to be a problem in the statute's application according to its plain meaning, it is up to Congress to address the problem.

# United States Court of Appeals
# for the Federal Circuit

_____

**CLICK-TO-CALL TECHNOLOGIES, LP,**
*Appellant*

**v.**

**INGENIO, INC., YELLOWPAGES.COM, LLC,**
*Appellees*

**ANDREI IANCU, UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,**
*Intervenor*

_____

2015-1242

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00312.

_____

DYK, *Circuit Judge*, joined by LOURIE, *Circuit Judge*, dissenting.

The en banc issue in this case is whether the time bar of 35 U.S.C. § 315(b) applies when a petitioner is served with a complaint more than one year before the petition for inter partes review ("IPR"), but the complaint is dismissed without prejudice. En banc consideration was occasioned by the fact that two different panels reached

opposite conclusions on this issue in this case and in *Luminara Worldwide, LLC, v. Matal*, No. 17-1629 (Fed. Cir. filed Feb. 13, 2018). The en banc court now agrees with the *Click-to-Call* panel and holds that section 315(b) applies, even when the earlier complaint was dismissed without prejudice.[1] In our view, the use of traditional tools of statutory construction leads to a conclusion opposite to the en banc court.

Section 315(b) provides that "inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent." In our view, the Board's interpretation of the statute was correct, and section 315(b)'s time-bar should not apply when the underlying suit has been voluntarily dismissed without prejudice. We reach this conclusion for three reasons.

First, the panel opinion relies on the language of section 315(b) as being unambiguous, because, on its face, it does not exclude voluntary dismissals without prejudice. But, the meaning of "service of a complaint" is not on its face unambiguous. In closely comparable circumstances, the Supreme Court has held that it is necessary to look beyond the language, to the context and purpose of the statute. *Kasten v. Saint-Gobain Performance Plastics Corp.*, involved language in the Fair Labor and Standards Act (the "Act"). 563 U.S. 1, 7 (2011). The Act's anti-retaliation section prevented employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has *filed any complaint* . . . under or related to [the Act]." 29

---

[1]    Contrary to the panel opinion (Panel Op. 14), this issue was not addressed, much less resolved, in the en banc *Wi-Fi* opinion. *See Wi-Fi One, LLC v. Broadcom Corp.*, 878 F.3d 1364 (Fed. Cir. 2018) (en banc).

U.S.C. § 215(a)(3) (emphasis added). The issue was whether an oral complaint fit within the language "filed any complaint." *Kasten*, 563 U.S. at 7. The Court concluded "the text, taken alone, cannot provide a conclusive answer to our interpretive question . . . . We must look further." *Id*. at 11. The Court examined how the words had been used by "legislators, administrators, and judges," *id*. at 8, and reviewed "contemporaneous judicial usage," *id*. at 9. These sources helped the Court conclude that oral complaints should qualify, because "considering the provision in conjunction with the purpose and context [led the Court] to conclude that only one interpretation is permissible." *Id*. at 7.

This situation is similar. In this context, the concept of service and filing seem to be equivalent. Section 315(b)'s phrase, "served with a complaint," is almost the same as the phrase "filed any complaint" at issue in *Kasten*. In *Kasten*, the issue was whether the complaint could include written and oral complaints, whereas the issue here is whether the complaint could include a complaint later voluntarily dismissed without prejudice. Both are situations where "[t]he definition of words in isolation," is not "necessarily controlling," or even clear in terms of ordinary meaning. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Rather, "[i]nterpretation of [the] word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id*.; *see also FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132 (2000) ("In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.").

Second, a well-established background principle supports the PTO's reading of the statute. Courts have typically treated voluntary dismissals without prejudice as restoring the parties to the situation that existed before the case had ever been brought. In *Bonneville Assocs. v. Barram*, 165 F.3d 1360, 1362–64 (Fed. Cir. 1999), an appeal to the General Services Administration Board of Contract Appeals had been voluntarily dismissed, and the question was whether the requirement of timely filing had been satisfied by the dismissed appeal. This made it necessary to "determine the effect of the voluntary dismissal of Bonneville's appeal without prejudice." *Id.* at 1364. Our court recognized that "[t]he rule in the federal courts is that '[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) "is to render the proceedings a nullity and leave the parties as if the action had never been brought."'" *Id.* (second alteration in original) (quoting *Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir. 1996)). Thus, dismissal "leaves the situation as if the suit had never been brought." *Id.* at 1363.

Similarly, in *Graves v. Principi*, 294 F.3d 1350, 1355–56 (Fed. Cir. 2002), we held that filing an appeal in Veterans Court did not toll the 120-day period for appeals from the decision of the Board of Veteran's Appeals, when the appeal was voluntarily dismissed without prejudice. We held that "as a matter of law, once [the veteran's] appeal was dismissed . . . it was as if the appeal had never been filed." *Id.* We explained that the

> dismissal of his initial appeal meant that Mr. Graves was barred from appealing the January 18, 1998 decision of the Board . . . . because, in light of the dismissal, he was in the same situation that he would have been in if he had never filed a notice of appeal, and by June 18, 1998, the date of the dismissal, the 120–day period under

section 7266(a) for filing a notice of appeal had passed.

*Id.* at 1356. We reiterated that "[t]he dismissal of an action without prejudice leaves the parties as though the action had never been brought." *Id.*

Other circuits have likewise treated dismissals without prejudice as restoring the parties to the exact situation as if the original complaint had never been filed. *See, e.g., Norman v. Ark. Dep't of Educ.*, 79 F.3d 748, 751 (8th Cir. 1996) ("[T]he 'effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought.'" (quoting *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 219 (8th Cir. 1997))).[2] The understanding that dismissal without prejudice renders the original

---

[2] *See also Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 (5th Cir. 2005) ("The effect of [a Rule 41(a)(1)] dismissal is to put the plaintiff in a legal position as if he had never brought the first suit." (alteration in original) (quoting *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir. 1976))); *Navellier v. Sletten*, 262 F.3d 923, 938 (9th Cir. 2001) ("A dismissal without prejudice . . . leaves the parties where they would have stood had the lawsuit never been brought." (citing *In re Corey*, 892 F.2d 829, 835 (9th Cir.1989))); *Beck v. Caterpillar, Inc.*, 50 F.3d 405, 407 (7th Cir. 1995) ("While [plaintiff's] first lawsuit was filed within the limitations period, that suit was voluntarily dismissed . . . and is treated as if it had never been filed."); *Simons v. Southwest Petro–Chem, Inc.*, 28 F.3d 1029, 1030–31 (10th Cir. 1994); *Humphreys v. United States,* 272 F.2d 411, 412 (9th Cir. 1959) ("[A] suit dismissed without prejudice pursuant to Rule 41(a)(2) leaves the situation the same as if the suit had never been brought in the first place.").

filing a "nullity" and restores the parties to the situation that would have prevailed if the original complaint had never been filed is supported by the leading federal practice treatise. *See* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC. AND PROC. § 2367 (3d. ed. 2018) ("[A]s numerous federal courts have made clear, a voluntary dismissal without prejudice . . . leaves the situation as if the action never had been filed.").

This rule has been applied in the closely comparable situation where a complaint dismissed without prejudice is held not to toll the statute of limitations, absent some evidence of a contrary legislative intent. *See Willard v. Wood*, 164 U.S. 502, 523 (1896) ("The general rule in respect of limitations must also be borne in mind, that if a plaintiff mistakes his remedy, in the absence of any statutory provision saving his rights, or where, from any cause, a plaintiff becomes nonsuit, or the action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred."); *Jorge v. Rumsfeld*, 404 F.3d 556, 563 (1st Cir. 2005) ("[A] prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice."); *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir. 1995) ("A dismissal without prejudice does not toll a statute of limitation."); *Robinson v. Willow Glen Acad.*, 895 F.2d 1168, 1169 (7th Cir. 1990) (holding that a tolling provision triggered by the "commencement of an action" did not apply where a complaint was filed but was later voluntarily dismissed); *Davis v. Smith's Transfer, Inc.*, 841 F.2d 139, 140 (6th Cir. 1988) (per curiam) ("The initial filing of plaintiff's suit within the six-month time period is simply not the effective filing date of plaintiff's suit because it was later dismissed by the plaintiff under Fed. R. Civ. P. 41(a). A suit, so dismissed, does not toll nor effect in any way the continuous running of the applicable statutory time period."); *Dupree v. Jefferson*, 666 F.2d 606, 611 (D.C. Cir. 1981) ("We conclude, then, that the rule against

tolling . . . applies with equal force to nonprejudicial dismissals, be they voluntary or involuntary."); *Curtis v. United Transp. Union*, 648 F.2d 492, 495 (8th Cir. 1981) ("It is our view that Rule 54(b) does not provide an exception in this case to the rule that the entry of a voluntary dismissal without prejudice leaves the action as if suit had never been brought for purposes of the statute of limitations."); *Bomer v. Ribicoff*, 304 F.2d 427, 429 (6th Cir. 1962) ("In the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending.").

The panel opinion suggests that this treatment of dismissals without prejudice is not a uniform rule and that "for many . . . purposes, the dismissed action continues to have legal effect." Panel Op. 23. This is not correct. The panel indicates only two such claimed instances: (1) where a dismissal without prejudice does not bar an award of costs as a sanction for a frivolous filing, *see, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990), and (2) where the filing is relied on to establish a controversy between the parties for assessing declaratory judgment jurisdiction, *see TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1300 (Fed. Cir. 2016). But neither of these is a situation where the issue is the legal effect of the earlier filing, and the question is whether the original filing triggers a legal obligation, such as the start of a time period. In that situation, the cases are uniform that, absent contrary intent, the earlier dismissed filing (or in this case service) has no legal effect.

We ruled in *Abbott Laboratories v. TorPharm, Inc.*, 503 F.3d 1372, 1379 (Fed. Cir. 2007), that "[w]e assume Congress's familiarity with general principles of law when enacting a statute." In other words, "Congress is presumed to legislate against the backdrop of existing law." *Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003); *accord Cannon v. Univ. of Chi.*, 441 U.S. 677, 698–99

(1979). This widespread treatment of voluntary dismissals without prejudice provided the background for the enactment of section 315(b), and section 315(b) must be read in light of that background legal principle, so that the one year time-bar is not triggered if the underlying infringement action is voluntarily dismissed without prejudice.

The importance of assessing the statutory language in the light of background principles is confirmed by *Keene Corp. v. United States*, 508 U.S. 200 (1993). There the statute provided that "the Court of Federal Claims 'shall not have jurisdiction' over a claim, 'for or in respect to which' the plaintiff 'has [a suit or process] pending' in any other court." *Id.* at 207 (alteration in original) (quoting 28 U.S.C. § 1500). The question was whether dismissal without prejudice of the previously filed action eliminated the jurisdictional bar. *Id.* at 202–05. The Supreme Court held that it did not. *Id.* at 209, 217. The Supreme Court did not primarily rely on the language of the statute to resolve the question, but looked instead to another applicable background principle—in that case the principle that jurisdiction is to be determined at the time the action (there the Claims Court action) was filed. *Id.* at 205–07. "In applying the jurisdictional bar here by looking to the facts existing when Keene filed each of its complaints, the Court of Federal Claims followed the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" *Keene*, 508 U.S. at 207 (quoting *Mollan v. Torrance,* 9 Wheat. 537, 539 (1824) (Marshall, C.J.)). In light of that principle, the Court held that the pendency of the district court action, at the time the Claims Court action was filed, was a bar. *Id.* at 209. So here, the background principle is that the dismissal of an action without prejudice leaves the parties as though the action had never been brought.

Third, typically where there is an intention to depart from the normal treatment of voluntary dismissals with-

out prejudice, the statute or the rule says so explicitly, there is a clear legislative decision to depart from the usual rule, or, as in *Keene*, there is a conflicting background principle. For example, Rule 41 itself states that we should depart from the normal rule when "the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, [in which case] a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). Similarly, in *Flowers v. Secretary of the Department of Health & Human Services*, 49 F.3d 1558, 1560–61 (Fed. Cir. 1995), we found that the Vaccine Act banned claimants from seeking related benefits "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death," 42 U.S.C. § 300aa–11(a)(5), even if that action was subsequently voluntarily dismissed without prejudice. Congress originally provided in the act that the co-pending bar would not apply if the plaintiff "withdraw[s] the action." *Flowers*, 49 F.3d at 1560 (quoting Pub. L. No. 99–660, tit. III, § 2111(a)(5), 100 Stat. 3755, 3759 (codified at 42 U.S.C. § 300aa–11(a)(5) (1988))). Congress, however, specifically repealed the exception. We concluded that the usual rule concerning voluntary dismissals without prejudice did not apply, because Congress specifically manifested contrary intent by removing the provision. *Id.* at 1561.

Likewise, in *Jenkins v. Village of Maywood*, 506 F.3d 622 (7th Cir. 2007), the Seventh Circuit recognized that the statute of limitations for a § 1983 claim could be tolled by the filing of a suit, later voluntarily dismissed without prejudice, because the Illinois statute governing the statute of limitations

> provides that if an action is voluntarily dismissed by the plaintiff, "then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff . . . may commence a new action within one year or within

the remaining period of limitation, whichever is greater . . . after the action is voluntarily dismissed by the plaintiff[.]

*Id.* at 624 (alterations in original) (quoting 735 ILL. COMP. STAT. ANN. 5/13–217).[3]

The fact is that Congress did not include any language in section 315(b) addressing voluntary dismissals without prejudice and here, contrary to the panel opinion, there is no legislative history supporting an opposing interpretation, suggesting that Congress intended to follow the usual rule, that such dismissals render the complaint a nullity.[4]

Finally, the purpose of the statute, as reflected in the legislative history, supports reading section 315(b)'s time bar as being inapplicable to voluntary dismissals without prejudice. One purpose of the statute was to require that the IPR petitioner file the IPR promptly after receiving notice of the patentee's claims through the filing of the infringement action. The panel opinion notes that Senator Kyl explained that the "315(b) deadline afford[s] defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the

---

[3]    Both the panel opinion and Judge Taranto's concurring opinion rely on section 315(a)(2)(C) as supporting the en banc holding showing that Congress made a deliberate choice not to refer to voluntary dismissals. Panel Op. 15; Concurring Op. 2. Section 315(a)(2)(C) simply provides that when an IPR has been instituted a later filed court action must be stayed until the court action is "dismissed." It is difficult to see how this can be read as congressional rejection in section 315(b) of the usual rule concerning the consequences of a voluntary dismissal.

[4]    Nor is this like *Keene*, discussed above, in which another background principle is predominant.

litigation." 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl).

While the panel opinion argues that the notice function supports their interpretation, in fact, the notice function would not be vindicated if the underlying complaint were voluntarily dismissed without prejudice. When an action is filed, and then later voluntarily dismissed, the accused infringer is led to think that the controversy has dissipated. In other words, the notice function of the filing is effectively eliminated by the dismissal without prejudice.

As discussed earlier, in the comparable situation involving statutes of limitations, while the original filing provides notice to the defendant,[5] that notice is nullified by a voluntary dismissal without prejudice, and the original filing does not toll the statute of limitations. *See, e.g., Willard*, 164 U.S. at 523. Here, as in the limitations context, the underlying purpose of section 315(b) is not served by filing a complaint that is voluntary dismissed without prejudice.

The statute was designed to give the petitioner a full year after receiving notice of the filing of the action to file the IPR, so that the potential petitioner could be fully aware of the claims and products at issue in the infringement litigation. The one year time-bar was intended to go into effect only after the defendant knows "which claims will be relevant and how those claims are alleged to read on the defendant's products." 157 Cong. Rec. S5429 (daily ed. 2011) (statement of Sen. Kyl). Despite the assertions to the contrary (Panel Op. 15–17), this purpose is thwart-

---

[5]  *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) ("Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights . . . .").

ed by an early voluntary dismissal without prejudice. In that situation, the defendant is unlikely to have received the contemplated information, and that information will be of limited value, as the defendant has been led to believe that the underlying infringement action will no longer continue.

So too, one of the purposes of section 315(b) in setting a one year time period was to bar the filing of an IPR when, typically, the district court action would have already consumed the time and attention of the court and parties. We have pointed out that in the inter partes review context, the "legislative history confirms . . . 'Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts and parties.'" *Murata Mach. USA, Ltd. v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) (quoting *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *5 (E.D. Tex. 2015)) (discussing AIA legislative history). However, the situations that result in a voluntary dismissal without prejudice do not implicate these concerns. This is because voluntary dismissals usually come early in the case, typically before the answer is filed or by agreement from both parties.

Finally, the purposes of section 315(b) will be defeated if the patentee plaintiff is allowed to manipulate the filing of infringement actions in order to bar a future IPR challenge. Indeed, if dismissals without prejudice did not nullify the underlying complaint, patent owners would have an incentive to file suits alleging infringement and subsequently voluntarily dismiss these suits without prejudice after service of a complaint. Such actions would effectively begin the one year clock for the accused infringer to file an IPR, even when there was no longer an underlying infringement action. Congress could not have intended to provide a mechanism for such manipulation.

Thus, we conclude that, contrary to the en banc holding, the section 315(b) time-bar should not apply when the

underlying complaint alleging infringement has been voluntarily dismissed without prejudice.